**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                    **Plaintiff,**

          **v.**                                        **05-CR-71A**

**HONG WAH CHENG,**

                    **Defendant.**
_____


## REPORT, RECOMMENDATION AND ORDER

          This case was referred to the undersigned by the Hon. Richard J. Arcara,

in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report

upon dispositive motions.


## PRELIMINARY STATEMENT

          The defendant, Hong Wah Cheng ("the defendant"), is charged in a multi-

count indictment with having violated Title 21 U.S.C. §§ 846, 952(a), 963 and Title 18

U.S.C. § 545. (Dkt. #17). He has filed a motion seeking to have this indictment

dismissed "because of a violation of his right under the 6th Amendment of the United

States Constitution to a speedy trial." (Dkt. #40, p. 1). The government has filed its

response in opposition to the defendant's motion to dismiss. (Dkt. #42). Oral argument

was heard by this Court on the defendant's motion on November 7, 2012.

# PROCEDURAL HISTORY

A Criminal Complaint against the defendant was filed on September 20, 2002 charging him with having violated 21 U.S.C. §§ 841(a)(1), 846, 952(a)(2), 960(a)(1) and 960(b)(1)(G) (Dkt. #1) and the defendant was arrested on that date. The defendant initially appeared before this Court on September 20, 2002 and a federal public defender was assigned to represent him. A detention hearing was scheduled for September 23, 2002. (Dkt. #3). On September 23, 2002, the government withdrew its motion to have the defendant detained and the defendant was released on $5,000 secured bail along with certain terms and conditions of release. The defendant was a resident of Fort Erie, Ontario, Canada, and as part of his release on bail, he was allowed to return to his residence in Canada while this matter was pending. A preliminary hearing was scheduled for October 23, 2002. (Dkt. #3). Thereafter, the scheduled preliminary hearing was adjourned at the request of the parties on October 23, 2002, November 27, 2002, January 8, 2003, February 26, 2003, March 19, 2003, April 16, 2003, May 14, 2003, May 28, 2003, and June 25, 2003 with a new scheduled date of July 30, 2003 so as to allow for plea negotiations to be conducted by the parties. On July 25, 2003, the United States Probation Office ("USPO") advised this Court that the defendant was in violation of the terms and conditions of his release on bail and requested that a warrant for the arrest of the defendant be issued. This Court issued a warrant for the arrest of the defendant on July 28, 2003. On July 30, 2003, the rescheduled date for the preliminary hearing and defendant's appearance, the Court was advised by the government that the defendant was now considered a fugitive.

On March 16, 2005, the present unsealed indictment against the defendant was filed in the Clerk's Office (Dkt. #17) and a warrant for his arrest was issued.

On November 2, 2005, this Court's Order revoking the defendant's bail and forfeiting his security of $5,000 was filed in the clerk's Office.

On May 27, 2010, the government formally undertook steps to have the defendant extradited from Canada. On March 29, 2011, the defendant was arrested on an extradition warrant issued by the Ontario Superior Court of Canada at the request of the United States government. Extradition proceedings were completed in Canada, and on August 19, 2011, the defendant surrendered to Canadian authorities for the purpose of being returned to the United States to answer the charges against him. The defendant was turned over to United States authorities on February 23, 2012. On February 24, 2012, he was arraigned by this Court on the indictment against him. The defendant was remanded to the custody of the U.S. Marshals Service ("USMS") and a scheduling order was put in place. Thereafter, numerous requests were made by the defendant, through his newly retained attorney, for extensions of time within which to file pretrial motions. (*See* Dkt. #s 24-38).

The defendant filed the present motion to dismiss the indictment on October 3, 2012 (Dkt. #39) and the government filed its opposition to the motion on

October 26, 2012 (Dkt. #42).  Oral argument on the motion was heard on November 7,

2012 by this Court and decision was reserved.


## DISCUSSION AND ANALYSIS

The defendant argues that the period between July 2003 and June 2010

(sic), when the government commenced extradition proceedings, constituted a

substantial delay in the prosecution of this case resulting in a presumption of prejudice

to the defendant.  (Dkt. #40, p. 5).  He further claims that the "government did not take

steps to exercise due diligence in finding him such as actively making an investigation,

a simple credit or DMV check would have given his address into his whereabouts."

(Dkt. #40, p. 8).  In support of his position to have the indictment dismissed because his

Sixth Amendment right to a speedy trial has been violated, the defendant cites *Barker*

*v. Wingo*, 407 U.S. 514 (1972) and *Doggett v. United States*, 505 U.S. 647 (1992).


In its response in opposition to the defendant's motion to dismiss, the

government asserts that the only "period of delay that should be considered by the

Court is the approximately 53 month period between the return of the March 16, 2005

Indictment and the time the government initiated the extradition process by forwarding

documentation to OIA[1] in August 2009."  (Dkt. #42, p. 10) (*see also* Exhibit C attached

to Dkt. #42).  Nevertheless, the "government acknowledges that an approximately four

and half year delay in seeking the defendant's extradition likely falls within the purview

---

[1] "OIA" is the Office of International Affairs within the Department of Justice.

of what both the Supreme Court and the Second Circuit have deemed as presumptively prejudicial" citing *United States v. Doggett, supra* and *United States v. Vassell*, 970 F.2d 1172 (2d Cir. 1989) (Dkt. #42, p. 11).

The language of the United States Supreme Court in *Doggett v. United States*, 505 U.S. 647 (1992) is most applicable to the factual circumstances in the case at hand and therefore, brevity will be sacrificed intentionally by setting it forth at length:

> We have observed in prior cases that unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including "oppressive pretrial incarceration**,**" "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence. [*Barker v. Wingo*, 407 U.S. 514, 532, 92 S. Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)]; *see also Smith v. Hooey*, 393 U.S. 374, 377-379, 21 L.Ed.2d 607, 89 S. Ct. 575 (1969); *United States v. Ewell*, 383 U.S. 116, 120, 15 L.Ed.2d 627, 86 S. Ct. 773, 776 (1966).
>
> *   *   *
>
> *Barker* stressed that official bad faith in causing delay will be weighed heavily against the government, 407 U.S. at 531, 92 S. Ct. 2182. . . .  Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground.  While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him . . . .  *Barker* made it clear that "different weights [are to be] assigned to different reasons" for delay.  *Ibid*.  Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.  And such is the nature of the prejudice presumed that the weight we

assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, *cf. Arizona v. Youngblood*, 488 U.S. 51, 101 L.Ed.2d 281, 109 S. Ct. 333 (1988), and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the government attaches to securing a conviction, the harder it will try to get it.

*Id*. at 654, 656-57.

As a result of the government's acknowledgment of "presumptively prejudicial delay," this factor operates as a "triggering mechanism" requiring an analysis and consideration of three other factors in determining whether the defendant's Sixth Amendment right to a speedy trial has been violated. *Barker v. Wingo, supra* at 530; *Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir. 1988). These three factors are: (1) the length of the delay; (2) the reason for the delay; and (3) the defendant's assertion of his right. *Barker, supra* at 530. The following constitutes such an analysis.

**(1) The Length of Delay**:

In determining the length of delay to be considered, the Court must "engage in a balancing process whereby the conduct of both the prosecution and the defense are weighed." *United States v. Saric,* 2011 WL 31079 (S.D.N.Y. 2011). The defendant was arrested on a Criminal Complaint on September 20, 2002 and the

"accusation" of having violated Title 21 U.S.C. Section 841(a)(1) *et seq.* asserted on

that day constitutes the starting point for measuring the period of delay. However, since

both the defendant and the government were in accord in seeking adjournments of

further proceedings during the period September 23, 2002 through July 30, 2003, a

period of ten plus months, that period of time should not be charged against the

government. In fact, the requests for delaying the proceedings during this time period

were made by the defendant. (*See* Dkt. #s 3 through 14).

On July 25, 2003, this Court was advised by the U.S. Probation Office

("USPO") that the defendant was in violation of the terms and conditions of his bail. As

a result, an arrest warrant was authorized by Order of this Court on July 28, 2003 and a

warrant for the arrest of the defendant was issued that date. Notice of this arrest

warrant and court order was sent to the defendant's attorney on July 28, 2003. (Dkt.

#15).

On July 30, 2003, the scheduled date for the preliminary hearing, the

government advised the Court that the defendant was now a fugitive, and this Court so

noted the defendant's status as such on the Docket of the Clerk's Office. (Dkt. #16).

The defendant asserts that the period of delay to be considered "includes

the period from July 2003 until, at a minimum, the commencement of the extradition

proceedings in June 2010 (sic)." (Dkt. #40, p. 5). The government argues that "the

approximately eighteen month period between the time the Court declared the

defendant a fugitive and the return of the unsealed, March 16, 2005 Indictment should be excluded from the perceived delay in this case." (Dkt. #42, p. 10). Instead, the government claims that "the period of delay that should be considered by the Court is the approximately 53 month period between the return of the March 16, 2005 Indictment and the time the government initiated the extradition process by forwarding documentation to OIA in August 2009." (Dkt. #42, p. 10). The government erroneously relies on the case of *United States v. Marion*, 404 U.S. 307 (1971) in support of its position. *Marion* was concerned with pre-indictment delay where no arrest or accusatory instrument had occurred. In the case at bar, the defendant was charged in a Criminal Complaint with having violated 21 U.S.C. § 841(a)(1) *et seq*. and was arrested on that "accusation" on September 20, 2002. In fact, the *Marion* court expressly held that the "Sixth Amendment provides that [i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .'On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution. .... The Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him." Id. at 313. This principle was reaffirmed by the Supreme Court in *Doggett* wherein it stated:

> Once triggered by arrest, indictment, or other official accusation, however, the speedy trial enquiry must weigh the effect of delay on the accused's defense just as it has to weigh any other form of prejudice that *Barker* recognized.

*Id.*at 656.

Therefore, it is this Court's opinion that the period of delay begins with the defendant's arrest on September 20, 2002. However, the defendant has acknowledged that the period of September 20, 2002 through July 2003 should be excluded from consideration since that period of delay was caused by or requested by the defendant. (Dkt.#s 2, 3, 6, 7, 8, 9,10, 11, 12, 13, 14). As a result, the Government will not be charged with that period of time for purposes of applying the *Barker* factors in determining the motion to dismiss.

The defendant argues that the period from July 2003 until June 2010 (sic) constitutes the period of delay that the Government should be charged with since the Government took no action whatsoever in pursuing the prosecution during that time period. (Dkt.# 40, p.5).In response, the Government argues that the time in which this Court declared the defendant a fugitive, to wit, July 30, 2003 (Dkt. # 16), and " the return of the unsealed indictment, namely, March 16, 2005 should be excluded from the perceived delay in this case" because of the fugitive status of the defendant (Dkt. # 42,p.10). It is the Government's position that "the period of delay that should be considered by the Court is the approximately 53-month period between the return of the March 16, 2005 Indictment and the time the government initiated the extradition process by forwarding documentation to OIA in August 2009." (Dkt.# 42, p.10).

In order for the Court to conclude as to what the actual period of delay is in determining whether the defendant's right to a speedy trial under the Sixth

Amendment has been violated, an analysis must be made of the reasons for the delay between July 2003 and May 27, 2010.  I have rejected the government's use of the August 2009 date as a cutoff date regarding this issue.  On August 19, 2009 the government merely forwarded drafts of a "legal statement and record" to presumably the Department of Justice for purposes undertaking extradition proceedings.  A formal initiation of such proceeding did not occur until May 27, 2010.  *See* Government Exhibits C and D attached to Dkt. #42.

### (2) Reasons for the Delay.

The defendant was scheduled to appear before this Court on July 30, 2003 for a status conference and a preliminary examination (Dkt. #14).  On July 25, 2003, this Court was advised by the USPO that the defendant was in violation of the terms and conditions of his release on bail and, as a result, a warrant for his arrest was issued on July 28, 2003.  (Dkt. #15).  On July 30, 2003, when the defendant failed to appear before this Court as scheduled, he was declared a fugitive.  (Dkt. #16). Notwithstanding the defendant's failure to appear in court as scheduled, the defendant now argues that "while he may have purposely failed to appear, the government did not take steps to exercise due diligence in finding him such as actively making an investigation, a single credit or DMV check would have given his address into his whereabouts.  If the government had taken such steps he would have been easy to find."  (Dkt. #40, p. 8).  He maintains that he did nothing "to avoid apprehension or to delay the government's efforts to find him" (Dkt. #40, p. 8) and that "he has never

attempted to conceal his whereabouts in any way" since he "lived openly within his home community."  (Dkt. #40, p. 3).

The government acknowledges that it was "under the obligation to exercise due diligence in attempting to locate and apprehend the accused, even if he is a fugitive who is fleeing prosecution."  *Rayborn v. Scully, supra* at 90.  However, the government argues that it was not required "to make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension or who has fled to parts unknown," citing *Rayborn, supra*.  (Dkt. #42, p. 12).

By its decision in *Smith v. Hooey*, 393 U.S. 374, 383 (1969), the United States Supreme Court established that the government has an affirmative obligation to locate and apprehend a known suspect.  As the court of Appeals for the Second Circuit has ruled:

> The determination as to whether a state has made sufficient efforts to satisfy the "due diligence" requirement is a fact-specific one, however, and the precise amount of effort that is required is apt to vary depending on the circumstances of the case.

*Rayborn, supra* at 90.

When the government advised that it had no objection to the release of the defendant on bail on September 23, 2002, it knew that the defendant was a citizen of Canada and that he would be residing in Canada while this matter was pending.

-11-

More specifically, the defendant stated, for purposes of his release, that he would be residing at 15 Queen Street, Fort Erie, Ontario, Canada.  This address for the defendant is set forth in this Court's Order Setting Conditions of Release (Dkt. #5) and the Appearance Bond signed by the defendant (Dkt. #4).  Fort Erie, Ontario, Canada is located directly across the Niagara River from Buffalo, New York and is easily reached by the Peace Bridge.

The government has not offered any evidence to contradict the defendant's assertion that from "September 20, 2002 through April 2007 [he] resided with his parents at 15 Queen Street, Fort Erie, Ontario" and that in April 2007, "he and his father, Chin Le, purchased a house at 7172 Parkdale Street, Niagara Falls, Ontario"[2] and that he lived openly at this address "from April 2007 until the day of his arrest on March 29, 2011 on the extradition warrant."  (Dkt. #40, p. 3).  The defendant also asserts, without contradiction, that he had numerous employments in Niagara Falls, Ontario from June 2004 to March 2011 and that he filed "Canadian income tax returns using his home address for each year that he was employed."  (Dkt. #40, p. 3).

This Court takes issue with the government's bold assertion that "the defendant left the country to hinder the government's prosecution of him, regardless of whether the defendant purportedly 'lived openly' upon his return to Canada."  (Dkt. #42,

---

[2] The distance between Buffalo, New York and Niagara Falls, Ontario, Canada is approximately twenty-three (23) miles and is easily reached by way of the Peace Bridge and the Rainbow Bridge.

p. 13).  The government affirmatively withdrew its motion to detain the defendant on September 23, 2002 and knew full well that by doing so, the defendant, being a Canadian citizen, would be returning to his home in Ontario, Canada upon his release. Therefore, it is disingenuous for the Government to now claim that "the defendant left the country to hinder the government's prosecution of him".  Admittedly, the government is not obligated "to make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension or has fled to parts unknown." *Rayborn, supra* at 90.  However, based on the record before this Court, it cannot be said that the defendant has "fled to parts unknown."  Further, "the determination as to whether [the government] has made sufficient efforts to satisfy the 'due diligence' requirement is a fact-specific one, however, and the precise amount of effort that is required is apt to vary depending on the circumstances of the case." *Id*.

It is uncontested by the government that during the period July 30, 2003 when the defendant was declared a fugitive (Dkt. #16) and March 16, 2005 when the indictment herein was filed (Dkt. #17), it took no action in either trying to apprehend the defendant, have him extradited, or present the matter to a grand jury.  At oral argument, counsel for the government admitted that he was unable to explain why no such action had been taken and why the matter remained dormant during this time period.

After the indictment was filed on March 16, 2005 and an arrest warrant for the arrest of the defendant issued, no action was taken by the government in prosecuting the defendant other than advising the Court on May 11, 2006 and June 11, 2009 that a new AUSA had taken over the prosecution of the case. Active prosecution of the case began on May 27, 2010 when the government initiated the extradition process by forwarding documentation to OIA (Dkt. #42, Exhibit D). At the time of oral argument, counsel for the government was unable to explain why this period of inaction was allowed to occur.

According to the uncontradicted representation of defense counsel, the defendant's whereabouts were easily determined when "the Marshals Service ran a simple credit check and within minutes, found out where he lived and worked." (Dkt. #40, p. 6). This claim is corroborated by the government's own Exhibit F attached to its Response to the Defendant's Motion. (Dkt. #42). That exhibit establishes that in September 2007, the USMS "ran [the defendant's name] for a Canadian Driver's License" and found addresses for the defendant at "7172 Parkdale St., Niagara Falls" and "15 Queen St., Fort Erie." This search process could have been initiated easily by the government shortly after the defendant was declared a fugitive. That process obviously did not involve or constitute "heroic efforts" in attempting to apprehend the defendant and bring him to trial. Why the government failed to immediately follow up on the information received from the USMS on September 4, 2007 (Dkt. #42, Exhibit F) and instead waited until August 19, 2009, a period of almost two years, to contemplate

extradition proceedings is unknown to this Court and unanswered by the government. The government's total inaction during the period July 30, 2003 and May 27, 2010, a period of six years and ten months, falls into the category of "official negligence in bringing [the defendant] to trial." However, there is nothing in the record before this Court to indicate that the delay was a deliberate attempt by the government so as to hamper the defense. Nevertheless, such negligence "should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker, supra* at 531.

However, not all of that time period of delay will be assigned to the government. The defendant, by his own actions of failing to appear as scheduled on July 30, 2003, caused the process of prosecution to cease. Notice had been given to his attorney on July 28, 2003 that the defendant was deemed to be in violation of his bail terms and that the Court had authorized the issuance of a warrant for his arrest. The defendant made no effort to resolve this issue by contacting his attorney or by appearing on July 30, 2003 as scheduled. It is presumed that the defendant's attorney advised him of the Court's order of July 28, 2003 and the existence of a warrant for his arrest. He previously had been put on notice that the case was scheduled for a preliminary hearing on July 30, 2003. His failure to appear is certainly evidence that the defendant had "no serious interest in the speedy prosecution of the charges against him" and therefore this factor weighs against him and tips to some extent in the favor of the government. *Rayborn, supra* at 92. As a result, I find that a period of twelve months, *i.e.*, July 30, 2003 to July 30, 2004 should be attributed to the defendant and

not the government for purposes of determining the length of delay in this case. After the expiration of this twelve month period, the government should have been aware that the defendant was not going to voluntarily surrender himself so as to allow the prosecution of the case to go forward. As a result, analysis of the remaining period July 31, 2004 to May 27, 2010 must be made in determining responsibility for the delay during this period.

As previously stated, the government has failed to provide a reasonable explanation as to why no action was taken by it in pursuing the prosecution of this case until March 19, 2005 when the unsealed indictment was filed.

The fact that the defendant had been declared a fugitive did not prevent the government from going forward with a grand jury presentment and the obtaining of an indictment sooner than March 19, 2005. Further, the government could easily have initiated extradition proceedings against the defendant well before May 27, 2010, especially since it had been advised as early as September 4, 2007 by the USMS as to the location of the defendant in Ontario, Canada. The government has failed to put forth any reason to explain this delay. "[T]he mere assertion of a 'general' policy not to seek extradition is insufficient by itself to satisfy the government's obligation of due diligence." *United States v. Diacolios*, 837 F.2d 79, 83 (2d Cir. 1988). Given the uncontradicted facts asserted by the defendant and the government's own Exhibit F (Dkt. #42), it is this Court's finding that a diligent search by the government would have resulted in the arrest of the defendant in Canada much earlier than March 29, 2011. As

a result, the government's total inaction in seeking to locate the defendant and have

him extradited during the period July 31, 2004 and May 27, 2010 played a substantial

role in delaying the defendant's apprehension.  Therefore, I find that this period of five

years and ten months tips against the government and in favor of the defendant in this

"balancing process."


### (3)  The Defendant's Assertion Of His Right.

It is pointed out that during the time period of July 30, 2003 to May 27,

2010, the defendant, represented by counsel, made no attempt to invoke his right to a

speedy trial.  As the Supreme Court stated in *Barker*, "[w]e emphasize that the failure to

assert the right will make it difficult for a defendant to prove that he was denied a

speedy trial."  *Supra* at 532.  The defendant was aware of the criminal charges against

him by reason of the Criminal Complaint and his appearance on that Complaint in this

Court on September 20, 2002.  The indictment of March 16, 2005 was filed as an

unsealed indictment and his attorney of record would have been advised of that filing.

Presumably, that attorney would have given notice of this indictment to the defendant.

The defendant's bail of $5,000 was forfeited by order of this Court on November 2,

2005, and notice of such forfeiture was likewise given to the defendant's attorney and

therefore presumably to the defendant.  His failure to assert his right to a speedy trial

until October 3, 2012 (Dkt. #39) is to "be weighed heavily against him."  *Doggett, supra*

at 653.  This is not to say that the defendant waived his right to a speedy trial by reason

of his lengthy delay in asserting his right since the Supreme Court expressly rejected

"the rule that a defendant who fails to demand a speedy trial forever waives his right."

Nor does a defendant have a "duty to bring himself to trial."  However, "a defendant has

some responsibility to assert a speedy trial claim" and therefore, his "assertion of or

failure to assert his right to a speedy trial is one of the factors to be considered in an

inquiry into the deprivation of the right."  *Barker, supra* at 528, 525.  As the Supreme

Court has stated:

> Whether and how a defendant asserts his right is closely
> related to the other factors we have mentioned.  The
> strength of his efforts will be affected by the length of the
> delay, to some extent by the reason for the delay, and most
> particularly by the personal prejudice, which is not always
> readily identifiable, that he experiences.  The defendant's
> assertion of his speedy trial right, then, is entitled to strong
> evidentiary weight in determining whether the defendant is
> being deprived of the right.  We emphasize that the failure to
> assert the right will make it difficult for the defendant to
> prove that he was denied a speedy trial.

*Barker, supra* at 532.

However, "the presumption that pretrial delay has prejudiced the accused

intensifies over time."  *Doggett*, *supra* at 652.

The defendant does not claim that he was subjected to oppressive pretrial

incarceration; nor does he claim anxiety and concern during the period of delay; nor

does he expressly assert that the delay has caused his defense to be impaired.

Rather, the defendant asserts that there is "an insuperable presumption of prejudice

given to the extent of the delay" in this case, which delay "is neither extenuated as by

the defendant's acquiescence nor persuasively rebutted" and therefore, he "is entitled to relief." (Dkt. #40, p. 10).

It is this Court's finding that a relatively substantial period of the delay and resulting prejudice, if any, is a direct consequence of the defendant's own behavior by reason of his bail violation and fugitive status. If the defendant had a "serious interest in the speedy prosecution of the charges against him" he could have appeared in Court on July 30, 2003 as required or surrendered himself at anytime thereafter and requested the prosecution of his case go forward. He chose not to do this and instead forced the government to undertake and carry out full extradition proceedings which it finally did on May 27, 2010.

However, because of the government's inaction or failure to take action in the prosecution of this case for a period of sixty-nine (69) months, to wit, July 30, 2004 to May 27, 2010, it is reasonable to find that this delay "intensifie[d]" the "presumption that pretrial delay has prejudiced the" defendant.

## CONCLUSION

Based on the foregoing, I find that the "balancing process" causes me to find that the conduct of the government in failing to exercise "due diligence" in apprehending the defendant and going forward with the prosecution of this case resulted in "prolonged and unjustifiable delays" that can not be condoned nor tolerated. *Doggett*, *supra* at 656-57. Since the government has totally failed to put forth a

reasonable explanation for not taking any action whatsoever during the periods July 31, 2004 and March 16, 2005 and March 16, 2005 and May 27, 2010, a total period of delay of approximately five years and nine months, that period of delay tips against the government on the balancing scale. As a result, it is recommended that the defendant's motion to dismiss the indictment herein based on a violation of his right to a speedy trial under the Sixth Amendment of the Constitution be GRANTED. This recommendation is made with full knowledge that in doing so, it results in "a serious consequence because it means that a defendant who may be guilty of a serious crime will go free without having been tried." *Barker, supra* at 522. Nevertheless, a message needs to be sent to the government if the concept of speedy trials to be enforced and that "official negligence" in the prosecution of criminal cases will not be tolerated.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order**. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:      Buffalo, New York
            January 9, 2013

                              *S/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**